Your Honor, the fifth case on today's call, 218-0901, MHenry Savings Bank v. Wife of Chief Cortina and Smith & Ollins. On behalf of the Plaintiff's Office, Mr. Thomas W. Gooch III. On behalf of the police, Mr. Thomas M. Lombardo. Mr. Gooch. Good afternoon, Your Honor. This case brings to you the question of what is judicial error and who should determine what it is and where it is, be it a trial court or an appellate court. And it brings to you what discretion a trial judge has in a mortgage foreclosure to require various actions of an attorney appearing before him, and finally what can be in a malpractice complaint. You maintain that Judge Caldwell, when he tried the Mortgage Foreclosure Act, had the right to require various proofs from the plaintiff, and when he didn't get them, he dismissed the case. And what would those proofs have resulted in? In order of foreclosure against the boys who were the defendants in that case. Wouldn't it be more precise to say that it would result in a judgment relating to the personal liability of one of the mortgagors? Yes, that would be a more precise way. And wasn't she discharged in bankruptcy and walked away from this mortgage? He was discharged in bankruptcy. They brought her in an involuntary – the defendants in the malpractice case brought in one of them in a involuntary bankruptcy and then dismissed it, which returned her to the appellate court. He was out of the house, and he discharged his obligations in bankruptcy under the note, but that would not result in a discharge of the security instrument, the mortgage. So there was still a viable defendant in Mrs. Moy. There was still a viable defendant. They still could have gotten personal judgments against her? They could have, yes. They could have gotten a personal money judgment against her, and again, they would have gotten – and I think any bank is more interested in an order of possession than they are in what might turn out to be an unenforceable, uncollectable judgment of money. But she was not under the protection of the bankruptcy court. For that matter, neither was Terry Moy as far as an order of possession went. Did the trustee, when he abandoned the property, did he abandon the property in her bankruptcy proceeding or in his? No, she never wanted to file bankruptcy. The bank, McHenry State Bank, with the defendant's assistance, filed an involuntary petition for bankruptcy against her. She then took certain actions to cause that matter to be dismissed. And what were those actions? As I recall, she proved she was not insolvent or they lacked sufficient creditors to keep her in bankruptcy court. It was not what you normally find in a bankruptcy proceeding filed by a debtor to delay a foreclosure. So she established that the bank wasn't a creditor that could possibly put her in bankruptcy? I think, as I recall, how a board should need two creditors to involuntarily put somebody into bankruptcy. And at the end of the proceeding, they did not need two creditors. Okay. So the matter we maintain very simply that, first off, as to a, and I realize I may fail in this argument, but as far as judicial error goes, I think it should be determined in the appellate court and not by a peer. Another way of saying it is three great minds are better than one. I don't know of but one case where a trial judge has been able to do that, and I don't believe that was in a malpractice case. But more than anything, I don't think Judge Caldwell committed any error. I think, as a basic rule, a lawyer is smart to just do as he's told in the courtroom. It goes a lot easier that way. When a trial judge tells you he wants some proof on something, it's better to give him that proof than to test him. And that's exactly what happened here. The defendant decided he would test Judge Caldwell on whether or not Judge Caldwell was right, and he just was not going to submit that. And you can see that because if you read the first complaint, we pled, and Judge McKellip and DuPage didn't agree that it was necessary, but we pled it to point out that he had ample warnings and opportunity to do it the right way. He had filed an unverified complaint foreclosure. He would not put in the affidavits when he moved for summary judgment what amount was owed or a number of other things that were required. Judge Caldwell told him what he needed, so the summary judgment motions were denied. And I think they're an essential part of the complaint. Just because of that, they demonstrate that he knew exactly what Judge Caldwell wanted. So then they go to trial, and there's a trial. There's a motion made for a direct verdict. It was granted. Then it was reversed. They reopened proofs to allow him to put it in, and he still didn't put it in. And we included quotes both in our response to the motion to dismiss and in the appellate brief of Judge Caldwell saying the things that were lax. He said there was no evidence of acceleration. There was no evidence of notice of default. There was no evidence of the notice of acceleration, and there was no evidence of the amount due. The only allegation in an unverified complaint was that there was around $409,000 remaining on a balance. Boy admitted that at some point he stopped making appointments. Appointments? Did you say appointments? Yeah. You know, I'm getting used to redemption, and it's causing me some real problems. I've only had it for a weekend. It's not that I've been out drinking at lunch hour. I'm just having trouble learning to talk again. With what? Is that a canker sore? Yeah, a little. Hydrogen peroxide. I'm sorry, sir? Hydrogen peroxide. Do you know what hydrogen peroxide is? Oh, yeah. No, you said a canker sore, Bob, but he said a denture. Oh, no, I said a denture. Denture? Yeah. It's inflamed, and if you take a swig of hydrogen peroxide and swish it around, if there's any foam that you see in your mouth, it's working, and it's removing the infection or inflammation that's there. So try that. I will, because as I'm trying to get used to this, it's causing a bunch of sores. Now you hear my medical issues at 71 years of age. Back to the subject at hand. He should have done what George Caldwell told him to do. When he failed to do it repeatedly, he lost the case, and the damage is flown from that because the bank can't get the house, nor do they pay for it. I mean, it's all been determined, and the damages are incredible because of it. Well, even if the judge is telling him to do something, if it's not required by law, how can that be legal malpractice? When you read 1506, our interpretation of 1506 in the Mortgage Foreclosure Act, particularly sub A, doesn't limit those requirements just to a motion. It requires them at trial also. So I think it is required. And certainly if you look at all the cases from 200 years ago forward, clearly the indication is the trend is to provide more information to a trial judge when he's taking someone's home away. Do you have authority to say that that is required to prove a prioritization case? I believe 1506A requires it, and I believe because it's an equitable proceeding, the Court has enough discretion to say I want to have this at trial. There is nothing in the complaint. Do you have a case on this? No, sir. Okay. No, but the clear meaning of the statute awards it. I don't think there's a case that says it doesn't. And if you look at the trend, you see the new Supreme Court rules that came into effect, they're very specific on that subject. So why wouldn't they be required to do that? But if it's an equitable proceeding, the Court certainly has the discretion when faced with an unverified complaint and a verified counter-complaint answer, strictly a verified answer, to require something like that. It's well within his discretion, and it doesn't rise to the level of judicial error. You have no more questions, I believe, I'm sorry. No, I didn't have a question. I was looking for a case that I wrote. It's in our memo. And it relates that when there's a discharge in bankruptcy and the bankrupt does not reaffirm the debt, then the only thing the mortgagee can do to mediate or mitigate its damages is to foreclose on the property and either sell the property, use the property, whatever. And you claim that she was dismissed in bankruptcy. You don't claim that she was discharged in bankruptcy because the trial court refused to allow the MSB Bank to attempt to get any personal judgments against her. And I believe we've taken judicial notice of the fact that she was discharged in bankruptcy. And if that's the case, there would appear to be no recourse against her. The only recourse would be against the property. And that suggests that your client hasn't been damaged unless the foreclosure that didn't happen, had it happened, would have been able to give you damages over and above the property. But the damage over and above the property that related to the proof that you were referring to don't relate to the mortgage foreclosure. My understanding of the law is if you prove the prima facie case to foreclose on the mortgage and you foreclose on the property, then you have proven a prima facie case. But you haven't necessarily proven a case to getting an efficiency, attorney's fees, interest, so on and so forth, that you might be able to obtain with a personal judgment against the mortgagee. Unfortunately, those issues were all before Judge Caldwell. Judge Caldwell entered judgment in favor of the defendants on the complaint for foreclosure, which included possession and a deficiency judgment. So the bank wound up with nothing. And, in fact, today, as I put in the brief, it became registered account of what Judge Caldwell ruled. They can't file another foreclosure. The note has been eliminated by Judge Caldwell. So the property is in limbo? No, the property is in possession of the Moyes and always will be. That's what we factually, that's what we can prove at trial, that the Moyes have a great deal going. But the bank was hurt. They didn't even get the value of the real estate because of Judge Caldwell's ruling in favor of the defendants. You can't just file another lawsuit after the judgment has been entered against you. I mean, you know, forgetting about it, if you sued me for money and I won, you can't do another lawsuit. And she was never discharged from bankruptcy. She was dismissed. She was dismissed as an involuntary debtor. Was there an appeal of Judge Caldwell's ruling? They did not file a notice of appeal. That's another issue that's part of the malpractice case. There's a serious factual dispute over whether or not they were discharged before they could file a notice of appeal or the bank told them they didn't want to. We maintain that the bank never took those actions and it should have been done. But that, again, is a factual question in our complaint. I don't have any other questions. Thank you, Mr. Mochillo. Thank you for your time. Thank you. Mr. Lombardo. It pleases the Court. Tom Lombardo on behalf of Michael Cortina and the lawyer, Smith-Hodgson. I have with me today Marianne Novy, representative of Smith-Hodgson. Your Honors, there are two issues that we believe you should affirm that Judge McKillop decided. The first is a 615 issue where he struck all of the allegations in the first amended complaint that involved pre-trial conduct. The focus in the appellant's brief is on Mr. Cortina apparently losing summary judgment motions and we have to take everything as true on a motion to dismiss. So we will take the allegations as true for purposes today that he submitted insufficient affidavits to win a summary judgment motion. Is that actionable for malpractice? The answer is no. It's actually very simple. To state a claim for malpractice against an attorney who handles litigation for a plaintiff, his conduct, even if it falls below the standard of care, is not actionable unless it results in the loss of the plaintiff's claim. And the loss here was Judge Caldwell's ruling. We assert, yes, that the loss was Judge Caldwell's ruling, but even if the loss, if you were to find that the loss was something else, nevertheless, negligent summary judgment practice, that part still has to be stricken under 615. The reason is because the case continued. It didn't end. There's no malpractice rights to recover against somebody because they didn't win the case fast enough. I didn't make the law. The appellate court made the law. That is, you know, what the law is. So we would submit that everything that Judge McKillop struck in the malpractice case under 615 was properly stricken, that decision to be affirmed, simply because that pretrial conduct didn't result in the loss of the case at trial. I will also point out that because it's a 615 issue, we're looking just at the four corners of the complaint, and Judge McKillop found nothing in the four corners of the complaint contained well-fled facts that linked pretrial negligent, allegedly negligent conduct, with the loss of the case at trial, so that there wasn't even a sufficient allegation of fact in the complaint. The bank argues that we are denying facts, and you can't deny facts in a motion to dismiss. That's simply not true. We're saying that there are none. They're just not there. So for all of those reasons, I think the easier part of the case, the 615 issues, is actually pretty clear. The more interesting case in the issue, and the issue that Justice has just asked Mr. Gooch a lot about, is what happened at trial. So at trial, there's no dispute that Mr. Cortina, on behalf of the Henry Savings Bank, introduced a note into evidence, a mortgage into evidence, and an event of default. He called one of the borrowers. They said, yes, that's the note. I signed it. Yes, that's the mortgage. I signed it. I stopped paying because I couldn't afford it anymore on such and such a case. At that point, Mr. Cortina rested. There was then a motion for a, they say, directed verdict, but I think what they meant was a directed judgment. It wasn't a jury trial. It was a finding. It was a directed finding. And initially, Judge Caldwell said, yes, there's no evidence of the amounts of ill-knowing, et cetera. But then he brought everybody back into chambers. And there's no record of what happened in the chambers, of course, but what we do have is Judge Caldwell came back out and said, I'm changing my mind. I was reminded that there was evidence of a note, a mortgage, and an event of default. I think what he had said was initially he didn't hear Mr. Moy say that he defaulted. So Judge Caldwell came back out and promptly said, okay, motion for a directive, finding denied. And then he looked at the defendant and he said, Moy, call your first witness. So I would suggest to your honors that he didn't really reopen the proofs. And I'd like to talk about the reopening of the proofs in a moment, but he didn't really reopen the proofs because he just immediately, the plaintiff had rested and he immediately went to the defendant's case. Now, 191 years of case law all says the same thing. It says that in a foreclosure where there's a note in the mortgage issue, a mortgage foreclosure case, the plaintiff makes a prima facie case by introducing the note, introducing the mortgage, and some of them say proving an event of default. They don't actually all say that third part, but it makes sense. And some of them do, so we'll accept that. There's no question that that occurred. Judge Caldwell clearly ruled several times in writing, it's in the record, that Mr. Cortina on behalf of the bank did introduce a note, a mortgage, and an event of default. Ultimately, after changing his mind several times and struggling with this issue, and I credit Judge Caldwell for trying to piece through this issue, we submit that he ended up with the wrong decision. The reason is he said, in addition to the note, the mortgage, and an event of default, you also have to prove the exact amounts of due winnowing and, frankly, a litany of other facts. And he felt that the plaintiff bank, Mr. Cortina's client, had to prove all of these additional facts. The problem with the ultimate decision Judge Caldwell made is that there's no law that says that level of proof is on a foreclosing lender. Again, all of the cases, and I've tried. I've tried very hard. I couldn't find any cases that disagree with the 10, 12-plus cases we cited in Abilene's brief. I can't find a single one that says anything else, and I will point out that McHenry Savings Bank also filed no cases that say something else. We have pre-Mortgage Foreclosure Act, I think 1986, 1987. We have pre-Foreclosure Act cases that all say what a pre-mortgage case is. Then we have five or six post-Mortgage Foreclosure Act cases, and they say the exact same thing. Mr. Gooch suggests, McHenry Savings Bank suggests, that the Foreclosure Act created a higher burden of proof on lenders. That is incorrect for several reasons. Number one, if the legislature intends to change something that was previously covered by the common law, and we know this was covered by the common law for 191 years, then they have to be very explicit in changing the common law when they write the statute. There is nothing in the Foreclosure Act that says the legislature intended to alter the elements of a prima facie case for foreclosure. It's not in there. Because it's not in there, courts are required to read the statute as adopting the common law, not altering it. That is a maximum statutory interpretation. So, we have pre- and post-Mortgage Foreclosure Act case law. It all says the same thing. Mr. Fortina made a prima facie case on behalf of the bank. The McHenry Savings Bank also focuses on the correct section, 1506, of the IMFL, the Illinois Mortgage Foreclosure Law, called IMFL. The first sentence of 1506 says, In the trial of a foreclosure, the evidence to support the allegations of the complaint shall be taken in open court. Then it says except, and it goes on to subparts A1 and A2. Neither of those subparts have anything to do with trials. The McHenry Savings Bank here says that subparts A1 and A2 also apply to trials. There is no possible interpretation of those sections that could lead to the conclusion that it applies to trials. Subpart A1 talks about when there's no denials in an answer, a plaintiff can prove the complaint's allegations by verification or affidavit. That's all it says. It doesn't talk about trials. Then A2 says when that happens, you can have a judgment of foreclosure by motion. A1 and A2 only exist for the benefit of one another, and neither have anything to do with the first sentence that says, In the trial of a foreclosure, the allegations shall be taken in open court. So the added burdens of affidavits and verifications and all of these things, they do not apply to trials. In a situation where a lender seeks a judgment of foreclosure by motion, the legislature chose to place a specific enunciated requirement. You have to have an affidavit of amounts to Illinois. That is clearly in, I believe it's in A2. If the legislature intended that level of proof to apply to trials, they would have said so, and they would have said we're changing the common law, but they didn't. After the Illinois mortgage foreclosure law was enacted, for many, many years, lenders would file all sorts of different kinds of affidavits proving things up. About seven or eight years ago, towards the end of the most recent recession, our Illinois Supreme Court decided to make a model for those affidavits. Illinois Supreme Court Rule 113. It says when you're seeking a judgment of foreclosure by motion, we want the affidavit in this format. If the Supreme Court wanted that to apply to trials, they would have said so. They did not. So at the end of the day, this case went to trial. The underlying foreclosure case went to trial. Foreclosure trials are very rare. There's not many. That's understandable. The vast majority are resolved on motion. The vast majority of case law deals with motion. The legislature and the Supreme Court focused on motion. But because nobody, no, the Supreme Court hasn't reversed its cases, which began with Ankeny v. Pierce back in the 1830s. I don't have the exact year, but 191 years ago. I know that. They decided to make a rule that applies to motion practice. The legislature decided to make a statute that applies to motion practice. They all left trials alone. So there wasn't a greater burden. Now, another thing that the bank argues is, why wouldn't a lawyer do more if the judge asked for it? Well, let's talk about that for a second. I think it's very important. First of all, Judge Caldwell at the foreclosure trial didn't ask for more at trial. There's allegations that during several many years of pretrial activity, the court had, Judge Caldwell had criticized affidavits. But, again, that didn't result in the loss of the case. It went to trial. When the case went to trial, there's nothing in the record that says, Mr. Cortina, I want you to go prove more. When they had their meeting in chambers and came back out, the judge denied the motion for a directed finding. When a court denies a motion for a directed finding, that means the court has decided that a prima facie case has been made. Why would a plaintiff, after a directed finding has been denied, jump up and say, I want to submit more evidence? Secondly, the bank argues here and argued in the malpractice case that a lawyer should do more if a judge asks for it. I will submit to you, it's very clear that a trial court does not have the power, whether they're sitting in law or equity, to alter the law. There's the elements of a prima facie case for foreclosure. A judge can't, in the midst of a trial, say, I want to change that and make your three prongs seven prongs. Imagine this is a negligence case. You have duty, breach, causation, and damages. What if the trial court, in any negligence case, said, you know what, it's not just duty, breach, causation, and damages. Here's three brand new elements that I want you to prove. That's not a valid thing for a court to do, and there's not a lawyer in the world that can ever prepare for such a moving target. Would that be an abuse of discretion? That absolutely would be abuse. That would be judicial error, yes. I don't know on appeal if that would be. It would probably be judicial error if it was a malpractice case, and it would be abuse of discretion. Speaking of appeal, was there a notice of appeal filed in the foreclosure case? There's nothing in the record before this Court that discusses appeals. And was there an allegation in the complaint that the attorney was committed malpractice by not appealing? There is not, Joe. Mr. Gooch referred to that, but I didn't see that in the complaint. It's not in the complaint, is it? It is not. I will tell you where it exists. I'm sure this is in the record. After Judge McKillop granted our motion to dismiss with prejudice, Mr. Gooch filed a motion for leave to amend the complaint again and attached a proposed pleading that had that in there, but then instead chose to prosecute this appeal, so that was abandoned. So we are only focused with what was ruled on. What was ruled on does not have that allegation. There is no allegation in this complaint that Mr. Gortino was negligent for recommending an appeal or not an appeal. So it is just not before the Court. It's not there. Right. Justices, I'd like to check my notes and make sure I covered everything while I'm doing that. If you have any other questions for me, I'd absolutely invite them. I have a question. What did the preceding bankruptcy result in? It's my understanding. Thank you for asking that because it reminded me of another point. It's my understanding that one of the Moys obtained a discharge, and I thought that that happened before the foreclosure case concluded. Sadly, I don't have those exact details here. I would be more than happy to file some kind of supplement for you, Your Honors. I can check into it, and if I have leave, I can give you an update on that. That reminded me to mention one other thing. There are allegations in this case that this foreclosure can never happen again, and I don't have the references with me. Although it's not in the record, I think it's legitimate for me to say this because it's a matter of judicial notice. A subsequent foreclosure case was filed and dismissed, I believe, on residue piccata grounds. Another one was filed, got past the motion to dismiss, and is now pending. That is my understanding. That's what I was told. If I'm wrong, I apologize in advance. I have no intention of misleading this Court. That is my understanding, and it is appropriate because it's in a court file and it's a public record, and it takes judicial notice of that. I don't believe that it is a dispositive issue in this case. I think this case turns only on two things. Number one, are pretrial actions that didn't result in the loss of the case actionable? That answer is no. And secondly, did Judge Caldwell hold Mr. Cortina and the bank to a higher burden of proof than the law requires? And that answer is yes. So both the 615 and the 619 orders from Judge McCulloch should be affirmed. Thank you, Mr. LaBaron. Thank you very much, Counsel. Mr. Guzzi. Mr. Butler. First, I know of a subsequent case that was filed in an attempt to foreclose and was dismissed with prejudice on residue piccata grounds. I know of no further filing. He says there was one, there probably was one, but I can't imagine how it's going to survive simply because one motion to dismiss may or may not have been denied or granted. It doesn't mean that it's going to survive, particularly when there's already been a dismissal on residue piccata grounds. As to whether or not there was a motion to reopen and a reopening, you'll find it in the appendix of my brief on page 26. There's a quote from the court. If I made a mistake on anything that's happened in this case, I think it was an evaluate Mr. Cortina's motion to reopen the case and deny the motion for a direct finding. For that reason, the post-trial motion is denied, and he went on to complain about the fact that he just wasn't given the information that he asked for. As for the allegations of the earlier summary judgment motions, bear in mind that if that summary judgment motion had been done properly, it would have been granted. I mean, an affidavit would have been a simple thing and there wouldn't have been a trial. That's the way most foreclosures go, but for some reason this time somebody decided to test, and the end result is a real disaster. And certainly the banks should get their day in court. In fact, we show what happened. As for the bankruptcy, she was never discharged from bankruptcy. You can find that in the case. You said during your opening argument here today that there was, there remains an issue as to whether or not there's malpractice in failing to file a notice of appeal. The counselor said you began with that. That was, you appealed what Judge McKillop ruled upon, not your amended plea. What I meant to say, what I thought I had said was that I think at the time of their discharge, the time to appeal had either evaporated or just a day left or two or three. But in any event, we allege, or we would allege, that the failure to file that notice of appeal immediately, if there was judicial error, is a further act of malpractice. Setting that aside, really there's nothing else to support such a cause of action. And you don't have, every complaint has allegations in it that in and of themselves don't create a cause of action, but they're there for other reasons. I mean, we intended to introduce his actions in the summary judgment motions at trial to show that he was well aware of what Judge Caldwell wanted. Well, is counsel correct, though, that there is, I mean, there's no question there was both pre- and post-mortgage foreclosure law, the act of case law that states that a premeditation case is made when you have evidence of no mortgage in default. We believe that when you read 1506A, it's not limited to just a motion. It includes at trial, too. Bear in mind we're dealing with an unverified complaint, a verified answer denying the allegations of the complaint. How can you not support your complaint with evidence? Are you saying that at trial you can submit affidavits? No. I think that's a hearsay document. I think at trial, once you get to that point, you have to put on evidence. And it wouldn't be a big deal. As Judge Caldwell said, give us the amount of money that's owed at the time you filed the complaint, not determine it right up to the minute of trial. But you have to prove something at trial when you have an unverified complaint and I think I beat this horse to death now, and a verified answer. You can't just walk in and say I'm not going to do it. Just rely on my unverified allegations. Yes. 1506a1 is, I don't think it says what you're saying it says. Because if you read A, it says in the trial of foreclosure, the evidence to support the allegations of the complaint shall be taken in open court. Okay. Except then it has paragraph that says where it's not denied by the party's answer or counterclaim, you can submit an affidavit. That's pretty clear. It's not saying what you're saying. Except that it was denied. It doesn't say that you have to do that at trial. That's not what that paragraph says at all. Well, there wasn't an affidavit submitted either. That has nothing to do with it. Because this is how you can prove it up if you don't go to trial. Okay. It uses the word except. Then the common law in the discretion of a trial court should allow the judge to require the proofs the judge calls relevant. To impose additional elements of the complaint to prove it? That doesn't make any sense. As an example, notice of acceleration is a condition preceded to a foreclosure. If it's in the mortgage. Only if it's in the mortgage. The mortgage was attached to the complaint. I believe it's in the appendix here. But a judge can't just sit there and say, hey, I'm going to require you to prove not only X, Y, and Z, but also I'm going to make you prove A, B, and C. You can't do that. I think what you can do is make them prove the default money owes, the acceleration notice, and the right to possession. What is accelerated? I'm sorry, sir? What is accelerated? Accelerate requires the entire debt to become due because of nonpayment. Meaning you have a mortgage with a balance of $290,000 and you defaulted on $6,000, the entire amount is accelerated. So we're talking about a money judgment, are we not? We should point out a case to you, Cathay Bank, that says it's a condition preceded to a foreclosure action. If it's in the mortgage. Acceleration relates to accelerating the payments on a judgment. It doesn't necessarily relate to the acceleration on a foreclosure. It doesn't mean that you supposedly can foreclose with a share of sale two weeks earlier than you normally could. The mortgage document required notice of the bank's intent to accelerate. That's a condition preceded to suing them to foreclose. That's what Judge Caldwell wanted proof of. Was there an acceleration clause in this mortgage? Yes. Are you sure about that? I haven't seen a mortgage that didn't contain one. Now, did I read the mortgage today? No. But I've seen enough mortgages to know a bank never passes up that opportunity because otherwise they would not be able to get the judgment for the entire amount due. You just said you don't do know or don't know. Is there anything in the record indicating that the mortgage at issue required MSD to provide employees with notice of acceleration? I recall Judge Killar required me to send him the note and mortgage before he ruled. And I'm almost certain that that mortgage contained a notice of acceleration, a requirement that there be a notice of acceleration. You're almost certain. Justice, it confuses me now. Nothing is ever certain in life, but I'm as certain as I can be. Okay. Is that a good way to answer that? Your time is up. Thank you. The court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course, and the court stands adjourned for the day. Thank you.